TOWNSEND AND TOWNSEND AND CREW LLP
BYRON W. COOPER (State Bar No. 166578)
GREGORY S. BISHOP (State Bar No. 184680)
MARILEE S. CHAN (State Bar No. 232432)
379 Lytton Avenue
Palo Alto, California 94301
Telephone: (650) 326-2400
Facsimile: (650) 326-2422
E-mail: bwcooper@townsend.com
gsbishop@townsend.com
mschan@townsend.com

TOWNSEND AND TOWNSEND AND CREW LLP
MAUREEN A. SHEEHY (State Bar No. 129859)
Two Embarcadero Center, 8th Floor
San Francisco, CA 94111
Telephone: (415) 576-0200
Facsimile: (415) 576-0300
E-mail: masheehy@townsend.com

Attorneys for Defendant and Counter Claimant
WENDELL BROWN

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| LiveOps, Inc., a Delaware Corporation,<br><br>Plaintiff,<br><br>v.<br><br>Teleo, Inc., a Nevada Corporation; Wendell Brown, an individual, and DOES 1 through 99, inclusive,<br><br>Defendants. | Case No. C05-3773 MJJ<br><br>**DEFENDANT WENDELL BROWN'S ANSWER AND COUNTERCLAIMS**<br><br>**DEMAND FOR JURY TRIAL** |
| Wendell Brown,<br><br>Counter Claimant,<br><br>v.<br><br>LiveOps, Inc. and William Trenchard,<br><br>Counter Defendants. | |

**DEFENDANT WENDELL BROWN'S ANSWER TO PLAINTIFF LIVEOPS INC.'S COMPLAINT**

Defendant Wendell Brown ("Brown") responds to Plaintiff LiveOps Inc.'s ("LiveOps") Complaint as follows:

**NATURE OF ACTION**

1. Brown admits that LiveOps asserts claims of copyright infringement, unfair competition, and misappropriation of trade secrets against Brown in this action. Except as expressly so admitted, Brown otherwise denies each and every allegation contained in Paragraph 1.

2. Brown denies each and every allegation contained in Paragraph 2.

3. Paragraph 3 only contains legal conclusions and does not require a response.

4. Brown admits that he has done business in this district. Except as expressly so admitted, Brown otherwise denies each and every allegation contained in Paragraph 4.

5. Brown lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 5, and on that basis denies each and every allegation contained therein.

6. Brown admits that LiveOps entered into a merger agreement with CallCast, Inc. in June 2003. Except as expressly so admitted, Brown otherwise denies each and every allegation contained in Paragraph 6.

7. Brown lacks sufficient information to admit or deny the allegations contained in Paragraph 7.

8. Brown admits the allegations set forth in Paragraph 8.

9. Brown admits that he resides in Las Vegas, Nevada and that he was co-founder of CallCast, Inc. In addition, Brown admits that he was a shareholder and director of CallCast, Inc. Except as expressly so admitted, Brown otherwise denies each and every allegation contained in Paragraph 9.

10. Brown lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 10, and on that basis denies each and every allegation contained therein.

11. Brown denies the allegations contained in Paragraph 11.

12. Brown lacks information sufficient to admit or deny the allegation that the contracts at issue in this action were executed in this district. Brown otherwise denies each and every allegation contained in Paragraph 12.

**BROWN'S TERMINATION AGREEMENT WITH PLAINTIFF**

13. Brown denies the allegations set forth in Paragraph 13.

14. Brown denies the allegation set forth in Paragraph 14.

15. Paragraph 15 purports to recite the contents of a document. Brown avers that the document speaks for itself. Brown admits that he signed the document attached to the Complaint as Exhibit 1. Brown otherwise denies each and every allegation contained in Paragraph 15.

16. Paragraph 16 purports to recite the contents of a document. Brown avers that the document speaks for itself. Brown otherwise denies each and every allegation contained in Paragraph 16.

17. Paragraph 17 purports to recite the contents of a document. Brown avers that the document speaks for itself. Brown otherwise denies each and every allegation contained in Paragraph 17.

**BROWN'S TECHNOLOGY ASSIGNMENT AGREEMENT WITH CALLCAST, INC.**

18. Paragraph 18 purports to recite the contents of a document. Brown avers that the document speaks for itself. Brown admits that he signed the document attached to the Complaint as Exhibit 2. Brown otherwise denies each and every allegation contained in Paragraph 18.

19. Paragraph 19 purports to recite the contents of a document. Brown avers that the document speaks for itself.

20. Paragraph 20 purports to recite the contents of a document. Brown avers that the document speaks for itself. Brown otherwise denies each and every allegation contained in Paragraph 15.

21. Paragraph 21 purports to recite the contents of a document. Brown avers that the document speaks for itself.

22. Paragraph 22 purports to recite the contents of a document. Brown avers that the

document speaks for itself.

23. Paragraph 23 purports to recite the contents of a document. Brown avers that the document speaks for itself.

24. Brown denies the allegations contained in Paragraph 24.

25. Brown denies the allegations contained in Paragraph 25.

**FIRST CLAIM: COPYRIGHT INFRINGEMENT**

26. Brown repeats and re-alleges each an every answer contained in Paragraphs 1 through 25, inclusive, and incorporates the same herein by reference.

27. Brown denies the allegations contained in Paragraph 27.

28. Brown denies the allegations contained in Paragraph 28.

29. Brown lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 29, and on that basis denies each and every allegation contained therein.

30. Brown denies the allegations contained in Paragraph 30.

31. Brown denies the allegations contained in Paragraph 31.

32. Brown denies the allegations contained in Paragraph 32.

33. Brown denies the allegations contained in Paragraph 33.

34. Brown denies the allegations contained in Paragraph 34.

35. Brown denies the allegations contained in Paragraph 35.

36. Brown denies the allegations contained in Paragraph 36.

37. Brown denies the allegations contained in Paragraph 37.

38. Brown denies the allegations contained in Paragraph 38

39. Brown denies the allegations contained in Paragraph 39.

**SECOND CLAIM: UNFAIR COMPETITION**

40. Brown repeats and re-alleges each an every answer contained in Paragraphs 1 through 39, inclusive, and incorporates the same herein by reference.

41. Brown denies the allegations contained in Paragraph 41.

42. Brown denies the allegations contained in Paragraph 42.

43. Brown denies the allegations contained in Paragraph 43.

44. Brown denies the allegations contained in Paragraph 44.

45. Brown denies the allegations contained in Paragraph 45.

**THIRD CLAIM: MISAPPROPRIATION OF TRADE SECRETS**

46. Brown repeats and re-alleges each an every answer contained in Paragraphs 1 through 45, inclusive, and incorporates the same herein by reference.

47. Brown admits he was the director of CallCast, Inc. Brown otherwise denies each and every allegation contained in Paragraph 47.

48. Brown denies the allegations contained in Paragraph 48.

49. Brown lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 49, and on that basis denies each and every allegation contained therein.

50. Brown lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 50, and on that basis denies each and every allegation contained therein.

51. Brown denies the allegations contained in Paragraph 51.

52. Brown denies the allegations contained in Paragraph 52.

53. Brown denies the allegations contained in Paragraph 53.

54. Brown denies the allegations contained in Paragraph 54.

55. Brown denies the allegations contained in Paragraph 55.

**FOURTH CLAIM: CONSPIRACY**

56. Brown repeats and re-alleges each an every answer contained in Paragraphs 1 through 55, inclusive, and incorporates the same herein by reference.

57. Brown denies the allegations contained in Paragraph 57.

58. Brown denies the allegations contained in Paragraph 58.

59. Brown denies the allegations contained in Paragraph 59.

60. Brown denies the allegations contained in Paragraph 60.

61. Brown denies the allegations contained in Paragraph 61

62. Brown denies the allegations contained in Paragraph 62.

**FIFTH CLAIM: CONVERSION**

63. Brown repeats and re-alleges each an every answer contained in Paragraphs 1 through 62, inclusive, and incorporates the same herein by reference.

64. Brown lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 64, and on that basis denies each and every allegation contained therein.

65. Brown denies the allegations contained in Paragraph 65.

66. Brown denies the allegations contained in Paragraph 66.

67. Brown denies the allegations contained in Paragraph 67.

**SIXTH CLAIM: BREACH OF WRITTEN CONTRACT**

68. Brown repeats and re-alleges each an every answer contained in Paragraphs 1 through 67, inclusive, and incorporates the same herein by reference.

69. Brown denies the allegations contained in Paragraph 69.

70. Brown denies the allegations contained in Paragraph 70.

71. Brown denies the allegations contained in Paragraph 71.

72. Brown denies the allegations contained in Paragraph 72.

**SEVENTH CLAIM: BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

73. Brown repeats and re-alleges each an every answer contained in Paragraphs 1 through 72, inclusive, and incorporates the same herein by reference.

74. Brown denies the allegations contained in Paragraph 74.

75. Brown denies the allegations contained in Paragraph 75.

**EIGTH CLAIM: BREACH OF FIDUCIARY DUTY**

76. Brown repeats and re-alleges each an every answer contained in Paragraphs 1 through 75, inclusive, and incorporates the same herein by reference.

77. Brown denies the allegations contained in Paragraph 77.

78. Brown denies the allegations contained in Paragraph 78.

79. Brown denies the allegations contained in Paragraph 79.

80. Brown denies the allegations contained in Paragraph 80.

81. Brown denies the allegations contained in Paragraph 81.

82. Brown denies the allegations contained in Paragraph 82.

83. Brown denies the allegations contained in Paragraph 83.

**AFFIRMATIVE DEFENSES**

Defendant Brown, as its further and separate affirmative defenses to the Complaint, alleges as follows:

**First Affirmative Defense**

1. The Complaint, and each and every purported cause of action therein, fails to state a claim upon which relief may be granted.

**Second Affirmative Defense**

2. Plaintiff lacks standing to assert the claims contained in the Complaint, to the extent Plaintiff has failed to demonstrate that Plaintiff is the owner of the copyrights or exclusive rights under state law alleged to have been infringed or misappropriated.

**Third Affirmative Defense**

3. The Court lacks subject matter jurisdiction over Plaintiff's claims to the extent that Plaintiff does not hold valid registrations of the copyrights alleged to have been infringed.

**Fourth Affirmative Defense**

4. Plaintiff's claims are barred by their fraud on the Copyright Office.

**Fifth Affirmative Defense**

5. Plaintiff's prayer for statutory damages and attorney's fees is barred to the extent that the copyrights do not meet the registration requirements of 17 U.S.C. §412(2).

**Sixth Affirmative Defense**

6. Plaintiff's claims are barred to the extent that Plaintiff claims rights to works that are not protected by copyright.

**Seventh Affirmative Defense**

7. Plaintiff's claims are barred by the doctrine of copyright misuse.

**Eighth Affirmative Defense**

8. Plaintiff's claims are barred by the fair use doctrine.

**Ninth Affirmative Defense**

9. Plaintiff's claims are barred to the extent they seek to claim copyright or other intellectual property rights as to works that are in the public domain and therefore not protected as a matter of law.

**Tenth Affirmative Defense**

10. Plaintiff's claims are barred by the Digital Millennium Copyright Act.

**Eleventh Affirmative Defense**

11. Plaintiff's claims are barred to the extent the allegedly unlawful use was licensed or otherwise authorized.

**Twelfth Affirmative Defense**

12. The information Plaintiff claims to be a trade secret was disclosed or known to the relevant public.

**Thirteenth Affirmative Defense**

13. The information comprising the alleged trade secret was rightfully known or available from a source other than Plaintiff.

**Fourteenth Affirmative Defense**

14. The Complaint, and each purported cause of action contained therein, is barred because Plaintiff released Brown from any and all liability.

**Fifteenth Affirmative Defense**

15. Plaintiff has unreasonably failed to mitigate, prevent, and/or reduce its alleged damages and injuries, if any.

**Sixteenth Affirmative Defense**

16. Damages to Plaintiff, if any, were not caused by Brown's conduct, but were caused by the conduct of other parties, including Plaintiff.

**Seventeenth Affirmative Defense**

17. The Complaint, and each purported cause of action contained therein, is barred by

equitable doctrines of waiver, estoppel, and/or abandonment.

**Eighteenth Affirmative Defense**

18. The Complaint, and each purported cause of action contained therein, is barred by the doctrine of unclean hands.

**Nineteenth Affirmative Defense**

19. The Complaint, and each purported cause of action contained therein, is barred, in whole or in part, because Plaintiff would be unjustly enriched if it were to prevail on any cause of action.

**Twentieth Affirmative Defense**

20. Defendant's actions, at all relevant times and places as referred to or mentioned in the Complaint, were necessary to the competitive operation of business, and Plaintiff's alleged injury, if any, is outweighed and properly justified by the commercial benefit to the public of Brown's actions.

**Twenty-First Affirmative Defense**

21. All contracts asserted by Plaintiff are null and void due to fraud, willful misrepresentation, negligent misrepresentation, and/or duress.

**Twenty-Second Affirmative Defense**

22. The agreements sued upon were obtained in violation of law and public policy and are therefore unenforceable.

**Twenty-Third Affirmative Defense**

23. The Complaint, and each purported cause of action contained therein, is barred by the applicable statutory or contractual statute of limitations.

**Twenty-Fourth Affirmative Defense**

24. Plaintiff's claims for breach of fiduciary duty are barred because Brown's actions were approved by the CallCast's Board of Directors.

**Twenty-Fifth Affirmative Defense**

25. The state claims brought by LiveOps in this federal action are compulsory counterclaims in the underlying state court action currently pending in the Superior Court of California, County of Santa Clara, Case No. 105-CV-042863 and to the extent a final determination is

made in the state court action, the state claims brought in this federal action are barred by res judicata and/or issue preclusion.

**Twenty-Sixth Affirmative Defense**

26. The Complaint, and each purported cause of action contained therein, is barred because Brown acted with Plaintiff's consent in all instances.

**Twenty-Seventh Affirmative Defense**

27. The Complaint, and each purported cause of action contained therein, is barred because Brown's conduct was privileged.

**Twenty-Eighth Affirmative Defense**

28. At all relevant times, Brown had the right to possess the materials that are the subject of the Complaint.

WHEREFORE, Brown denies that Plaintiff is entitled to any relief whatsoever from Brown and respectfully requests judgment dismissing the Complaint with prejudice against Brown; award costs and attorneys' fees as may be allowed by law; and such further relief as the Court deems appropriate.

**COUNTERCLAIMS**

Defendant Wendell Brown, by and through its attorneys, and by way of Counterclaims against LiveOps, Inc. and William Trenchard, alleges:

**PARTIES**

1. Counter Claimant Wendell Brown ("Brown" or "Counter Claimant") is a Nevada resident.

2. Brown is informed and believes and thereupon alleges that Counter Defendant LiveOps, Inc. ("LiveOps" or "Counter Defendant") is presently a corporation organized and existing under the laws of the State of Delaware with its principle place of business in Santa Clara County, at 3340 Hillview Avenue, Palo Alto, California. Upon information and belief, LiveOps was formerly incorporated in the State of Florida.

3. Brown is informed and believes and thereupon alleges that Counter Defendant William Trenchard ("Trenchard" or "Counter Defendant") is a resident of or is employed in the County of

Santa Clara, California.

**JURISDICTION AND VENUE**

4. These counterclaims seek relief for which this court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1367(a).

5. To the extent that this action remains in this District, venue is appropriate pursuant to the provisions of 28 U.S.C. § 1391(b).

**BROWN IS THE INVENTOR AND OWNER OF THE TECHNOLOGY USED BY LIVEOPS**

6. Brown was a co-founder of CallCast, the inventor of all the technology used by CallCast, a former 50% owner of CallCast, as well as a member of its Board of Directors. As a co-founder and director of CallCast, Brown entered into the Technology Assignment Agreement dated February 15, 2002 attached to Plaintiff's Complaint as Exhibit 2 (the "2002 Technology Assignment"). The 2002 Technology Assignment specifically defined and limited the intellectual property that Brown contributed to CallCast. The purpose of the 2002 Technology Assignment was to define and specifically delimit the intellectual property rights Brown would contribute to the CallCast venture, and to reserve any non-contributed intellectual property he created for himself.

7. The technology being used by CallCast at issue in this case relates to routing incoming phone calls for use with call centers and work-at-home call center agents. The technology involves specific methods to manage and control one or more local or 1-800-numbers to ring into a managed phone switch, switches or gateways, which then processes and selects an agent to be assigned to receive that incoming call, to whom the incoming call is then rerouted out to that call center agent and/or work-at-home agent or contractor via and to their regular existing POTS telephone lines.

8. Prior to founding CallCast, Brown developed VoIP telephony expertise at eVoice. Brown founded eVoice in 1998 and later sold it to AOL in 2001. Brown developed various outsourced lower-cost call routing technologies at eVoice. While acting as eVoice's Founder, Chairman, and Chief Technology Office – Brown designed and built an innovative nationwide voicemail system. eVoice raised over $70M in venture capital, signed up millions of users to use a nationwide voicemail system, and won numerous industry awards. Brown is the inventor or co-inventor of many patents in the telephony area, and eVoice applied for and was issued about 6 U.S.

patents in the areas of telephony and voicemail.

9. William Trenchard and Brown formed CallCast in 2001. Trenchard had no background or experience in telephony or VoIP. Brown had substantial technical expertise in telephony and had just sold eVoice to AOL. CallCast at first explored various markets (prepaid calling cards, providing anonymous phone calls for "blind dating" services like match.com, etc.). Brown's expertise in VoIP allowed Brown to create technology solutions to create telephony services/products for these possible new markets for telephony services. By February 2002, five U.S. patent applications had been prepared naming both Brown and Trenchard as the inventors. In reality, as Brown had considerable telephony technology expertise (and Brown had just filed for many prior patents while at eVoice) and Trenchard had no telephony expertise, Brown was in fact the primary inventor on all five patent applications. Trenchard had asked to be listed as the co-inventor, but was minimally involved in co-inventing the inventions described in those patent applications. In February 2002, Brown assigned those 5 patent applications to CallCast in the 2002 Technology Assignment. The technology embodied in these five patent applications surrounded telephony services products for these new markets. As set forth in the 2002 Technology Assignment, the technology Brown transferred to CallCast was essentially tied to the technology in the five patent applications. Unfortunately, this technology was not commercially viable and was never commercially successful for CallCast.

10. In late 2002, CallCast contacted LiveOps. LiveOps was in the "work at home" call center business – employing work-at-home call center agents around the country. To handle the call routing for these work-at-home call center agents, LiveOps was paying an outside vendor to route calls to available agents working at their home. The agent would view a computer screen (web) and would receive incoming calls on the agent's regular, analog, home phone line (non-VoIP). Incoming calls went from the caller who might have dialed a 1-800-number, to the call handling center, then forwarded to a specific work-at-home call center agent on that agent's regular analog phone line. Brown saw an opportunity to build a better/cheaper solution using technology to route calls and proceeded to build a prototype solution to test to see whether this could, in fact, be a viable solution for commercial (high) volume use.

11. In late 2002, CallCast prepared a functioning system using the technology that Brown developed that was demonstrated to LiveOps. Brown's solution enabled CallCast to deliver the same call-switching service cheaper. Brown's technology enabled CallCast to offer smarter call routing to an available work-at-home call center agent, for example selecting a particular agent among the available agents who historically had the highest sales closing rate.

12. By March 2003, CallCast and LiveOps were very successfully using Brown's technology routing thousands of calls per month to their work-at-home call center agents. On information and belief, today LiveOps continues to use Brown's technology to sell call center services to commercial customers (not individual end users) such as Citibank, Staples, 1-800-flowers, etc. (companies who have large inbound commercial call traffic that needs to be answered by a human operator to typically take a customer order). LiveOps competes with other call center companies such as West, Convergys, and Contactual. As more fully set forth herein, the call center technology developed by Brown and used by CallCast and LiveOps was never assigned to CallCast. Brown is the inventor and owner of this technology.

**BROWN IS DUPED INTO SIGNING THE TERMINATION AGREEMENT**

13. Beginning in the Winter of 2003, Brown's co-founder Trenchard represented to Brown that CallCast was out of operating funds and unable to raise investment. As CallCast's CEO, Trenchard was responsible for meeting with Silicon Valley venture capitalists to try to raise money for its continued, independent viability. At least as early as April 2003, Trenchard unambiguously told Brown that none of the venture capitalists Trenchard met with were interested in investing in CallCast. During the same time period, Trenchard began traveling to Florida to meet with LiveOps to discuss LiveOps' proposal to acquire CallCast. Trenchard actively discouraged Brown from traveling with him, despite Brown's requests to go. Beginning in February 2003, the month Trenchard first met with LiveOps, Trenchard stopped supplying Brown with CallCast's detailed financials. Before then, Trenchard provided Brown with CallCast's detailed financials approximately weekly. As Trenchard continued to provide verbal accounts of CallCast's finances, and as Brown trusted Trenchard, he did not then have reason to suspect anything was amiss.

14. Trenchard affirmatively portrayed a merger with LiveOps as CallCast's sole means of

remaining viable, and Trenchard so told Brown. Simultaneously, Trenchard also told Brown that LiveOps would not agree to acquire CallCast so long as Brown remained with the company or held his 50% interest in the shares of the company.

15. In reliance upon Trenchard's false representations to him, Brown agreed, *inter alia*, to sign the Termination Agreement, attached as Exhibit 1 to the Complaint filed by LiveOps in this Action. Under the terms of the Termination Agreement, as fraudulently procured by Trenchard and LiveOps, Brown agreed to terminate his relationship with CallCast, waive his claim for salary and to release all claims against CallCast, LiveOps and others. Brown would not have agreed to the Termination Agreement but for Trenchard's representations to him.

16. After agreeing to the Termination Agreement, and after the merger with LiveOps, Brown discovered that the facts represented to him by Trenchard were false. For example, Brown learned that one of the Silicon Valley venture capital funds whom Trenchard had represented was not interested in investing in CallCast, in fact was interested and had told Trenchard that it wanted to invest substantially in CallCast. Trenchard did not inform Brown of this investment prospect and, in fact, misrepresented that there were no prospects.

17. Trenchard's misrepresentations and omissions described above amount to fraud under California Civil Code §1572. Brown is informed and believes that Trenchard made these misrepresentations despite Trenchard and the LiveOps' belief that the representations were not true, or that Trenchard and LiveOps lacked reasonable grounds to believe they were true.

18. Additionally, before the merger, LiveOps unsuccessfully sought Mr. Brown's agreement to transfer to CallCast the additional intellectual property developed by Brown after February 2002. Specifically, in the Spring of 2003, Brown was presented with a written Proprietary Invention Assignment Agreement, to assign his inventions to CallCast (and hence to LiveOps post-merger). Brown declined to sign that agreement and expressly informed Trenchard and LiveOps that he would not assign any technology beyond the original assigned technology.

///

///

///

**FIRST COUNTERCLAIM**

**FRAUD AND DECEIT**

**(Against Counter Defendants Trenchard and LiveOps)**

19. Brown repeats and re-alleges each and every allegation contained in Paragraphs 1 through 18, inclusive, and incorporates the same herein by reference.

20. Prior to Brown's signing the Termination Agreement in June 2003, Trenchard made the representations and omissions more fully set forth above, which were designed to induce, and did in fact induce Brown into leaving his position at CallCast and signing the Termination Agreement.

21. Trenchard, although CallCast's CEO, in fact made each of the foregoing misrepresentations and omissions on behalf of and/or at the direction of LiveOps. In making the various representations and omissions alleged above, Trenchard was acting as an agent of LiveOps. These representations and omissions were intended to benefit LiveOps, as well as Trenchard personally.

22. The representations made by Counter Defendants were in fact false. Furthermore, the omission of facts made by Counter Defendants were intentionally misleading in order to deceive Brown into signing the Termination Agreement. The true facts were that CallCast had venture capital firms interested in investing in it, and was not in danger of running out of operating funds and going out of business as Trenchard represented.

23. When Counter Defendants made these representations, they knew them to be false and made these representations with the intention to deceive and defraud Brown and to induce him to act in reliance on these representations in the manner hereinabove alleged, or with the expectation that Brown would so act.

24. Brown, at the time these representations were made by Counter Defendants and at the time he took the actions herein alleged, was ignorant of the falsity of Counter Defendants' representations and believed them to be true. In reliance on these representations, Brown was induced to and did sign the Termination Agreement. Had Brown known the actual facts, he would not have taken such actions. Brown's reliance on Counter Defendants' representations was justified because he had no reason to believe that Trenchard would falsely report that all potential investors had chosen to

not invest in CallCast, would falsify company finances, or that he would take steps to falsify the value of the shares of stock Brown sold, or make other such misrepresentations regarding CallCast.

25. The aforementioned conduct of Counter Defendants constituted intentional misrepresentations, deceits, or concealment of material facts known to the Counter Defendants with the intention on their parts of depriving Brown of his property or legal rights or otherwise causing injury, and was despicable conduct that subjected Brown to a cruel and unjust hardship in conscious disregard of Brown's rights, so as to justify an award of exemplary and punitive damage.

**SECOND COUNTERCLAIM**

**CONVERSION**

**(Against Counter Defendant LiveOps)**

26. Brown repeats and re-alleges each and every allegation contained in Paragraphs 1 through 25, inclusive, and incorporates the same herein by reference.

27. At all times herein mentioned, Brown was, and still is, the owner, and entitled to possession of certain documents and data and computer data discs that contain or reference Brown's intellectual property and proprietary information.

28. Brown is further informed and believes, and upon such information and belief alleges, that the above-mentioned property has a value to be determined at trial according to proof. Counter Defendants, and each of them, have taken and/or permitted to be taken the above-mentioned property from Brown's possession and retain such property without authorization, and have converted the same to their own use and/or to the use of others.

29. As a direct and proximate result of the conversion by Counter Defendants, and each of them, Brown has incurred damages in an amount to be determined at trial according to proof.

30. The aforementioned acts of Counter Defendants, and each of them, in converting said property, was willful, wanton, malicious, fraudulent, intentional and oppressive, and justifies an award of punitive damages in an amount sufficient to punish Counter Defendants.

///

///

///

**THIRD COUNTERCLAIM**

**BREACH OF WRITTEN CONTRACT**

**(Against Counter Defendant LiveOps)**

31. Brown repeats and re-alleges each and every allegation contained in Paragraphs 1 through 30, inclusive, and incorporates the same herein by reference.

32. Brown has fully performed or is excused from performing the conditions, covenants, and promises required to be performed in accordance with the terms and conditions of the Termination Agreement.

33. In paragraph 7 and 9 of the Termination Agreement, CallCast, on behalf of itself and its successors, agreed never to sue Brown based on any claim which it had released Brown, including any claims, whether known or unknown, with respect to any matter, including Brown's services to the company, his employment by the company, including claims for fraud, breach of contract and breach of fiduciary duty.

34. LiveOps breached Paragraph 9 of the Termination Agreement by bringing the present suit against Brown.

35. As a proximate and legal result of the breach alleged herein, Brown has suffered and will suffer damages in a sum to be proven at trial, but which exceeds the jurisdictional minimum of this Court. On this basis, Brown is entitled to breach of contract damages, including reasonable attorneys' fees, for any and all losses, sums, costs and expenditures attendant to this litigation proximately and legally caused by LiveOps' breach and the failure to comply with the terms and requirements of the Termination Agreement.

**FOURTH COUNTERCLAIM**

**BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

**(Against Counter Defendant LiveOps)**

36. Brown repeats and re-alleges each and every allegation contained in Paragraphs 1 through 35, inclusive, and incorporates the same herein by reference.

37. The actions, omissions, conduct, and contentions, as herein alleged, by LiveOps, constitute a breach of covenant of good faith and fair dealing implied in the Termination Agreement

and Assignment Agreement. For example, the fundamental purpose of the 2002 Technology Assignment was to specifically limit and identify the technology being assigned by Brown to CallCast, and to make clear that all other technology developed by Brown was reserved to him. By now publicly asserting that LiveOps owns technology in fact owned by Brown which was never assigned to CallCast or LiveOps, LiveOps has breached the implied covenant of good faith and fair dealing in the 2002 Technology Assignment.

38. The breach of the implied covenant of good faith and fair dealing by LiveOps has caused substantial damage to Brown in an amount currently unknown, but which exceeds the minimum jurisdictional requirements of this court and will be proven at trial.

**FIFTH COUNTERCLAIM**

**(Cal. Bus. & Prof. Code Section 17200 et seq.)**

**(Against All Counter Defendants)**

39. Brown re-alleges paragraphs 1 through 38 inclusive, as though fully set forth herein.

40. The aforementioned conduct by Counter Defendants constitutes and was intended to constitute "unlawful, unfair or fraudulent business act[s] or practice[s]" within the meaning of California Business & Professions Code § 17200.

41. As a consequence of Counter Defendants' conduct, Brown is entitled to injunctive relief and restitution and/or disgorgement of profits obtained by Counter Defendants through their unlawful, unfair and/or fraudulent conduct.

**SIXTH COUNTERCLAIM**

**(Declaratory Judgment)**

**(Against Counter Defendant LiveOps)**

42. Brown repeats and realleges each and every allegation contained in Paragraphs 1 through 41, inclusive and incorporates the same herein by reference.

43. An actual and justiciable controversy has arisen and now exists between Brown and LiveOps with respect to the ownership of and rights in the inventions and technology developed by Brown subsequent to the 2002 Technology Assignment which was used by CallCast and later LiveOps. An actual and justiciable controversy has also arisen and now exists between Brown and

LiveOps with respect to the scope of and interpretation of the terms of the 2002 Technology Assignment.

44. Brown asserts that he is the rightful owner of any technology developed by him subsequent to the 2002 Technology Assignment, which is or was used by CallCast and/or later LiveOps. LiveOps denies that Brown has any rights therein and asserts, *inter alia*, that any rights in such technology were transferred to CallCast (and subsequently LiveOps upon its acquisition of CallCast) under the terms of the 2002 Technology Assignment.

45. Brown further asserts that the 2002 Technology Assignment assigned to CallCast only the technology and intellectual property rights specifically identified in the Agreement, existing on the date thereof; there was no continuing assignment of technology or intellectual property rights by him to CallCast under the terms of that Agreement. LiveOps, for its part, contends that the terms of the 2002 Technology Assignment assigned to CallCast rights in technology and intellectual property developed by Brown and used by CallCast and/or LiveOps subsequent to that date up until the time Brown separated from CallCast.

**PRAYER FOR RELIEF**

WHEREFORE, Brown prays for judgment against Counter Defendants, and each of them, as follows:

That Plaintiff receive no judgment or award on its causes of action, and that Brown receive judgment as set forth hereinafter.

**First Counterclaim - Fraud And Deceit**

1. For general, special, and punitive damages in an amount to be determined at trial;
2. For costs of suit; and
3. For such other and further relief as the court may deem proper.

**Second Counterclaim - Conversion**

1. For the value of the property converted to be determined at trial;
2. For damages for the proximate and foreseeable loss resulting from Counter Defendants’ conversion in the amount to be determined at trial;
3. For punitive damages;

4. For interest at the legal rate;

5. For costs of suit; and

6. For such other and further relief as the court may deem proper.

**Third Counterclaim - Breach Of Written Contract**

1. For compensatory damages in an amount to be determined at trial;

2. For reasonable attorneys' fees;

3. For costs of suit; and

4. For such other and further relief as the court may deem proper.

**Fourth Counterclaim - Breach Of The Implied Covenant Of Good Faith And Fair Dealing**

1. For compensatory damages in an amount to be determined at trial;

2. For costs of suit; and

3. For such other and further relief as the court may deem proper.

**Fifth Counterclaim - Cal. Bus. & Prof. Code § 17200 et seq.**

1. For restitution and/or disgorgement of profits in an amount to be determined at trial;

2. For reasonable attorneys' fees;

3. For costs of suit; and

4. For such other and further relief as the court may deem proper.

**Sixth Counterclaim - Declaratory Relief**

1. For a declaration that Brown is the rightful owner of any technology developed by him subsequent to signing the 2002 Technology Assignment which was used by CallCast and/or LiveOps.

2. For a declaration that the 2002 Technology Assignment assigned only the technology specifically identified therein and did not implement a continuing assignment of technology developed by Brown after the date of the 2002 Technology Assignment.

///

///

///

**DEMAND FOR JURY TRIAL**

Counter Plaintiff demands a jury trial for all issues triable of right by a jury pursuant to Rule 38, Federal Rules of Civil Procedure.

DATED: January 26, 2006

Respectfully submitted,

By: /s/ Maureen A. Sheehy

Maureen A. Sheehy
Byron W. Cooper
Marilee S. Chan
Gregory S. Bishop
TOWNSEND AND TOWNSEND AND CREW LLP
379 Lytton Avenue
Palo Alto, California 94301
Telephone: (650) 326-2400
Facsimile: (650) 326-2422

Attorneys for Defendant and Counter Claimant
WENDELL BROWN

60681381 v1